IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

ALAN FLOYD                                                                                                    PLAINTIFF

v.                                              Case No. 6:22-cv-06117

TRINITY CENTRAL HOME HEALTH, LLC                                              DEFENDANT

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant's Motion for Summary Judgment. ECF No. 18. Plaintiff responded in opposition. ECF No. 21. Defendant replied. ECF No. 23. The Court finds the matter ripe for consideration. For the following reasons, Defendant's Motion for Summary Judgment will be denied.

### I.  BACKGROUND

In 2017, Plaintiff Alan Floyd, a registered nurse, began employment with Defendant Trinity Central Home Health, LLC. Defendant is a "Medicare-certified home health care agency" that "provides health care and health related social services in the comfort of the patient's home." ECF No. 20, p. 1; ECF No. 22, p. 1. Plaintiff had been a registered nurse for over eighteen (18) years. Defendant hired Plaintiff as a *pro re nata* (PRN) nurse, meaning he worked on an as needed basis. Plaintiff was interested in this position with Defendant because he could set his "schedule around [his] kids and [his] family." ECF No. 22-1, pp. 21-22.

While working for Defendant, Plaintiff's primary responsibilities included conducting assessments of patients in their homes, advising on appropriate medical care, and being an advocate for his patients. Plaintiff's at-home assessments included "head to toe" assessments, including heart and lung checks. ECF No. 22-1, p. 30. Plaintiff's primary patient population included pediatric patients who were receiving home health care due to medical conditions and their potential to become so sick that they need inpatient hospital care.

In addition to providing direct patient home health care, Plaintiff was required to attend weekly staff meetings at Defendant's facilities. Plaintiff was "in and out" of Defendant's facilities around four times per week. *Id.* at 25. The only part of Plaintiff's job that he could perform without having direct contact with people would be making phone calls. Jennifer Rogers was Plaintiff's immediate supervisor who was responsible for evaluating Plaintiff's work performance.

In September 2021, Defendant developed a mandatory Covid-19 vaccination policy in response to the Centers for Medicaid and Medicare Services (CMS) mandatory vaccine mandate for Medicaid and Medicare health providers. Pursuant to the policy, all of Defendant's employees were required to receive the Covid-19 vaccination. On September 15, 2021, Rick Still, Defendant's Executive Operations Director sent the following email communicating the mandatory vaccine policy to Defendant's employees:

> Subject: Mandatory Vaccination Policy
>
> Dear Valued Trinity Employee,
>
> Trinity Home Health of Arkansas has implemented a mandatory vaccination policy effective 10/31/21 requiring a Covid-19 vaccination for all employees. In accordance with Trinity's duty to provide and maintain a workplace that is free of known hazards, we are adopting this policy to safeguard the health of our employees and their families, our customers and visitors, and the community at large from infectious diseases that may be reduced by vaccinations.
>
> All employees must begin the vaccination process no later than 10/31/21. All employees must be fully vaccinated by 11/30/21. Individuals seeking an exemption from this requirement for medical or religious reasons should complete a request for accommodation form and submit the form to the human resources department immediately.
>
> Should you have any question regarding this new policy, please contact you local HR director.
>
> Sincerely,
>
> Rick Still
> Executive Operations Director

ECF No. 18-2.

When Plaintiff received notice of the mandatory vaccine policy he got "angry."  ECF No. 22-1, p. 33.  On October 14, 2021, Plaintiff sent the following reply all response to Defendant's employees:

> **Subject:**         Re: Covid Vaccine
>
> **Follow Up Flag:**   Follow up
> **Flag Status:**      Flagged
>
> This about the safety to our employees and others or about being forced by Biden's admin because you are scared?  It seems like this is a Trinity ruling by the wording.  What are the chances of breakthrough infection for those with the engineered spike proteins vs the breakthrough infections for those already that's recovered from Covid like myself.  That's right I have better immunity than anyone that just has the leaky Covid vaccines or show me the science if I'm wrong.  I'll challenge my natural immunity and overall health against anyone that works for any of David's corporations.  Anyone with a soul or courage shouldn't allow themselves to be overruled by political and medical tyranny.  Trinity Home Health will be losing the only pediatric home health nurse in this community along with the longest employee remaining here at Trinity with this vaccine mandates.  David, it's time to have some courage.  Be like the founders of this country and resist.  Now's the time to show your fortitude.  Rick, send this to your upper management bc I know this ruling isn't yours.
>
> Sincerely,
>
> Alan Floyd

ECF No. 18-3.[1]  Plaintiff subsequently[2] submitted a religious exemption request to Human Resources where he stated that he objects to vaccines because he believes in and follows "God and the principles laid out in His Word" and he has a "deeply held belief that this Covid-19 vaccine violates them."  ECF No. 18-4.  Plaintiff further elaborated on reasons for his objection to the vaccine.  *See id.*

---

[1] At his deposition, Plaintiff stated that David is the owner of Defendant's corporation, however, Plaintiff could not remember his last name.  ECF No. 22-1, p. 37.
[2] It is unclear to the Court exactly when Plaintiff made this request.

On October 19, 2021, Plaintiff's supervisor, Rogers, informed Plaintiff that his request for a permanent exemption from the vaccination was denied. The notice provided as follows:

Describe the requested accommodation:

Permanent exemption from COVID-19 vaccination.

Evaluation of impact (if any): Mr. Floyd is a registered nurse working in a PRN capacity, which involves direct contact with other employees and home health patients. Due to his job description, there is a significant risk of substantial harm to the health and safety of the employee, other employees, and the patients of the agency that cannot be eliminated or reduced by reasonable accommodation. The work environment is indoors, with direct and daily contact with others that cannot be eliminated.

ECF No. 18-8. Shortly thereafter, Plaintiff was terminated from his position with Defendant.[3]

On November 11, 2022, Plaintiff filed this case pursuant to Title VII and the Arkansas Civil Rights Act (ACRA) alleging religious discrimination. ECF No. 2. Plaintiff seeks compensatory and punitive damages. *Id.*

On December 12, 2023, Defendant filed its Motion for Summary Judgment. ECF No. 18. On December 22, 2023, Plaintiff responded in opposition. ECF No. 21. On December 29, 2023, Defendant replied to Plaintiff's response. ECF No. 23.

## II. STANDARD

The standard for summary judgment is well established. A party may seek summary judgment on a claim, a defense, or "part of [a] claim or defense." Fed. R. Civ. P. 56(a). When a party moves for summary judgment, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Krenik v. Cnty. of LeSueur*, 47 F.3d 953, 957 (8th Cir. 1995). This is a "threshold inquiry of . . . whether there is a need for trial—whether, in

---

[3] Plaintiff was "terminated in October or November of 2021." ECF No. 22-1, p. 74.

4

other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they reasonably may be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A fact is material only when its resolution affects the outcome of the case. *Id.* at 248. A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Id.* at 252.

In deciding a motion for summary judgment, the Court must consider all the evidence and all reasonable inferences that arise from the evidence in a light most favorable to the nonmoving party. *Nitsche v. CEO of Osage Valley Elec. Co-Op*, 446 F.3d 841, 845 (8th Cir. 2006). The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See Enter. Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996). The nonmoving party "may not rest upon mere allegations or denials . . . but must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. "A party that fails to respond to any basis of a motion for summary judgment effectively waives any argument in opposition to that aspect of a motion for summary judgment." *See Department of Labor v. EJ's Cleaning Services, Inc.*, 2020 WL 1432048, at *1 (E.D. Ark. March 19, 2020) (citing *Satcher v. Univ. of Ark. at Pine Bluff Bd. of Trs.*, 558 F.3d 731, 735 (8th Cir. 2009)).

### III. DISCUSSION

Plaintiff brings claims of adverse employment actions resulting from religious discrimination under Title VII and the ACRA. Title VII prohibits an employer from "discharg[ing] any individual, or otherwise [ ] discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion[.]" 42 U.S.C. § 2000e–2(a)(1). The ACRA similarly prohibits employment discrimination on the basis of religion, among other grounds. *See* Ark. Code Ann. § 16-123-107.

"ACRA claims are analyzed in the same manner as federal Title VII claims." *Pearson v. Tyson Foods, Inc.*, No. 4:23-CV-01080-BSM, 2024 WL 1311420, at *1 (E.D. Ark. Mar. 26, 2024) (citing *Bell v. Baptist Health*, 60 F.4th 1198, 1203 (8th Cir. 2023)); *see also Orr v. City of Rogers,* 232 F. Supp. 3d 1052, 1061 n.2 (W.D. Ark. 2017) ("Title VII and ACRA claims 'are governed by the same standards.'" (quoting *McCullough v. Univ. of Ark. for Med. Scis.*, 559 F.3d 855, 860 (8th Cir. 2009))).

To establish a *prima facie* case for religious discrimination under Title VII, Plaintiff must show that he: (1) has a bona fide religious belief that conflicts with an employment requirement; (2) informed Defendant of that conflict; and (3) suffered an adverse employment action. *Jones v. TEK Indus., Inc.*, 319 F.3d 355, 359 (8th Cir. 2003). Once Plaintiff establishes a *prima facie* case under this three-pronged test, the burden shifts to Defendant to show that accommodating the plaintiff's religious beliefs would result in undue hardship. *Seaworth v. Pearson*, 203 F.3d 1056, 1057 (8th Cir. 2000). The Court will first discuss Plaintiff's *prima facie* case before shifting its focus to Defendant's burden to show that undue hardship would result from accommodating Plaintiff's permanent vaccine exemption request.

A. **Plaintiff's *Prima Facie* Case**

Focusing only on the first factor of the three-prong test set out in *Jones*, Defendant argues that Plaintiff cannot establish a *prima facie* case because Plaintiff fails to show that he has a bona fide religious belief that conflicts with Defendant's vaccination requirement. ECF No. 19, p. 9-11. Only "beliefs rooted in religion, as opposed to purely secular beliefs or personal preferences" are protected. *Love v. Reed*, 216 F.3d 682, 687 (8th Cir. 2000). "To determine whether a belief is religious, factors to consider include whether it addresses 'fundamental and ultimate questions having to do with deep and imponderable matters,' if the teachings are 'comprehensive in nature,'

and if 'certain formal and external signs' are present." *Pearson v. Tyson Foods, Inc.*, No. 4:23-CV-01080-BSM, 2024 WL 1311420, at *2 (E.D. Ark. Mar. 26, 2024) (quoting *Love*, 216 F.3d at 687). The "difficult and delicate" determination of whether a belief is indeed religious may not "turn upon a judicial perception of the particular belief or practice in question." *Thomas v. Rev. Bd. of Indiana Emp. Sec. Div.*, 450 U.S. 707, 714 (1981). "[R]eligious beliefs need not be acceptable, logical, consistent, or comprehensible to others in order to merit" protection. *Id.* "It is, thus, not a question of whether a plaintiff's religious beliefs are reasonable, ethical, or well-founded—but only whether those beliefs are indeed religious." *Jackson v. Tyson Foods, Inc.*, No. 5:23-CV-5102, 2023 WL 9097854, at *3 (W.D. Ark. Nov. 27, 2023) (internal quotations omitted).

Defendant asserts that "[n]otwithstanding [Plaintiff's] use of religious terminology, the overarching theme of his communications, exemption requests, and testimony demonstrate that [Plaintiff's] objections are political in nature and personal autonomy driven." ECF No. 19, p. 10. Thus, Defendant argues because Plaintiff's "objections to the mandatory Covid-19 vaccine are individual preferences, indicating a medical, political, safety, and personal objection, rather than one rooted in religion, [Plaintiff] cannot make out a prime [sic] facie case of religious discrimination." *Id.* at 11. To support its argument, Defendant relies on *Petermann v. Aspirus, Inc.*, No. 22-332, 2023 WL 2662899 (W.D. Wis. March 28, 2023), *Bube v. Aspirus Hosp., Inc.*, No. 22-CV-745-JDP, 2023 WL 6037655 (W.D. Wis. Sept. 15, 2023), *rev'd and remanded*, No. 23-2892, 2024 WL 3562972 (7th Cir. July 29, 2024), and *Kiel v. Mayo Clinic Health Sys. Se. Minnesota*, 685 F. Supp. 3d 770 (D. Minn. 2023), *rev'd and remanded sub nom. Ringhofer v. Mayo Clinic, Ambulance*, 102 F.4th 894 (8th Cir. 2024).

In the present case, Plaintiff asserted in his religious exemption request to Defendant that he is a "Christian who believes in the Bible, including the teaching in the New Testament"; he has

7

"a Christian worldview"; and that "this perspective recognizes that faith and conscience compel an individual to submit to the proper jurisdiction within the rule of law, in this case Divine law." ECF No. 18-4.  Further, Plaintiff stated that he objects to vaccines because he believes in and follows "God and the principles laid out in His Word" and he has a "deeply held belief that this Covid-19 vaccine violates them." *Id*.  Plaintiff believes his "body is a temple for the Holy Spirit" and provides the following convictions that he holds:

- If God intended for me to get the vaccine, then in July 2020 I would have never caught Covid-19 and obtained antibodies to it.  I have proof of antibodies that I will provide.  For all the data that has been produced, Gods natural immunity does best to defeat this virus.

- In the Book of Revelations, it speaks of "Mark of the beast."  I currently don't believe this engineered spike proteins are the mark of the beast but it's the introduction to it by world government agencies and now private businesses making it mandatory.  It is also backed by Big Pharmaceuticals and in Revelations it mentions pharmakia and it being the downfall of Babylon. Revelation 18:23 "And the light of a candle shall shine no more at all in thee; and the voice of the bridegroom and of the bride shall be heard no more at all in thee; for thy merchants were the great men of the earth; for by thy pharmakia were all nations deceived."  Revelation 21:8 "But the cowardly, the unbelieving, the vile, the murderers, the sexually immoral, those who practice magic arts pharmakia, the idolaters and all liars—they will be consigned to the fiery lake of burning sulfur.  This is the second death."

- God teaches to treat your body as a temple for the Holy Spirit.  I do my best to do that.  I workout 4+ times a week, eat healthy, take vitamins, and have around 15% body fat.  I have researched this vaccine and the companies still fail to release all of their ingredients and side effects of this vaccine.  I have followed the VAERS report and many lives have been lost by taking these spike proteins or been permanently wounded by the spike proteins.  Will the engineered spike proteins lead to ADE?

- Early in the development of mRNA vaccine technology, fetal cells were used for "proof of concept" (to demonstrate how a cell could take up mRNA and produce the SARS-CoV-2 spike protein) or to characterize the SARS-CoV-2 spike protein.  I have convictions about aborted fetal cells and lives lost for the creation of this and other vaccines.

ECF No. 18-4.

In *Kiel*, as Defendant points out, a plaintiff similarly objected to a mandatory Covid-19 vaccine mandate and asserted a religious belief that her body was a "Temple to the Holy Spirit" and that she, therefore, could not "put into it substances which are impure or dangerous." *Kiel*, 685 F. Supp. 3d at 783. She additionally objected to the vaccine because she alleged that "receiving the COVID vaccine is against her anti-abortion beliefs." *Id.* The district court in *Kiel* concluded that because the plaintiff did not allege a religious belief to explain why she believed the vaccine was "impure or dangerous," but instead based that view on medical and safety determinations, she did not satisfy the first prong of the standard set out in *Jones*. The court explained:

> The important question isn't whether an employee has a religious belief not to mistreat her body; the question is whether the employee's belief that the vaccine qualifies as a mistreatment is itself based in religion. If [plaintiff] believed that the vaccine defiled her body because it was unhealthy or unsafe, that would be a medical objection, not a religious objection . . . But if her objection to the vaccine was rooted in her belief 'that she must remain as God made her,' that would be sufficient to show a religious conflict at the pleading stage.

*Id.* (quoting *Petermann*, 2023 WL 2662899 at *2). The district court additionally concluded that the plaintiff did "not actually tie her anti-abortion beliefs to any formal or external signs of religion," and because a "religious opposition to **abortion** is different from an opposition to **vaccines** that were potentially developed using a fetal cell line," she "fail[ed] to tie her opposition to the vaccine to any particularized religious belief." *Kiel*, 685 F. Supp. 3d at 783-84 (emphasis in original) (internal quotations omitted). The court consequently dismissed the plaintiff's Title VII claims at the pleadings stage and granted the defendants' motion to dismiss. Defendant argues that the Court should similarly reject Plaintiff's "(1) Body as a temple of the holy spirit justification; and (2) Fetal line cell/abortion objection" and determine that Plaintiff "failed to present any 'religious beliefs' to support his request for a permanent vaccine exemption and

9

dismiss [Plaintiff's] claims with prejudice."  ECF No. 19, p. 9; ECF No. 23, p. 9.

However, in May of this year, the Eighth Circuit reversed the district court's dismissal of the plaintiffs' Title VII claims in *Kiel* concluding that "[b]y connecting their objection to testing to specific religious principles," the plaintiffs satisfied their burden at the pleadings stage. *Ringhofer v. Mayo Clinic, Ambulance*, 102 F.4th 894, 902 (8th Cir. 2024).[4]  "[Religious] beliefs," the court emphasized, "do not have to be uniform across all members of a religion or 'acceptable, logical, consistent, or comprehensible to others.'" *Id.* (quoting *Thomas*, 450 U.S. at 714, 101 S. Ct. 1425).  The Court finds that Plaintiff adequately identifies religious views that he believes conflicts with taking the Covid-19 vaccine.

Although Defendant states otherwise,[5] the Court views Defendant's arguments as ones challenging the credibility of Plaintiff's asserted beliefs regarding the vaccine.  As previously noted, Defendant argues that, "[n]otwithstanding [Plaintiff's] use of religious terminology, the overarching theme of his communications, exemptions requests, and testimony demonstrate that [Plaintiff's] objections are political in nature and personal autonomy driven," not religious.  ECF No. 19, p. 10.  Defendant points to Plaintiff's October 14, 2020 email as the "best example of [Plaintiff's] true motive."  *Id.*  Plaintiff's email, reproduced in its entirety above, makes references to "Biden's admin" and "political and medical tyranny" in regard to Defendant's vaccine policy.  ECF No. 18-3.  Defendant points out that "[o]ther than the single use of the word 'soul,' nothing in [Plaintiff's] email is rooted in religion."  ECF No. 19, p. 11.  Further, Defendant points to

---

[4] The Seventh Circuit recently reversed the district court's decision in *Bube*, 2023 WL 6037655, granting the defendant's motion to dismiss and dismissing the plaintiffs' Title VII claims on similar grounds opining that they "have recognized—in the Title VII context no less—that courts should avoid putting themselves in the impossible position of trying to define religious legitimacy and view-point sufficiency."  *Bube v. Aspirus Hosp., Inc.*, No. 23-2892, 2024 WL 3562972 at *3 (7th Cir. July 29, 2024); *and see Redmond v. GAF Corp.*, 574 F.2d 897, 900–01 (7th Cir. 1978) (explaining that Title VII protects "conduct which is 'religiously motivated,' i.e., all forms and aspects of religion, however eccentric"); *see also Adeyeye v. Heartland Sweeteners, LLC*, 721 F.3d 444, 452 (7th Cir. 2013) (emphasizing Title VII's "broad and intentionally hands-off definition of religion").

[5] *See* ECF No. 23, p. 1.

10

Plaintiff's deposition where he testified that he got "angry" after receiving Defendant's email announcing the vaccine policy. ECF No. 22-1, p. 33. Defendant states that "[t]he reason for his anger was not a religious objection, rather it was political." ECF No. 19, p. 11.

Defendant's arguments clearly challenge the motive and sincerity behind Plaintiff's objections to the Covid-19 vaccine, of which is a challenge to Plaintiff's credibility. The issue of credibility is one that should be left to the factfinder. *See Murphy v. Missouri Dep't of Corr.*, 372 F.3d 979, 983 (8th Cir. 2004) (recognizing that whether something "is a sincerely held religious belief is a factual determination"); *see also Vetter v. Farmland Indus., Inc.*, 120 F.3d 749, 752–53 (8th Cir. 1997) (noting that "[t]he jury had the duty to determine whether [the defendant's] residence requirement interfered with the observance or practice of [the plaintiff's] religion or whether he chose to live elsewhere because of a purely personal preference"); *E.E.O.C. v. Union Independiente de la Autoridad de Acueductos y Alcantarillados de Puerto Rico*, 279 F.3d 49, 56 (1st Cir. 2002) ("Credibility issues such as the sincerity of an employee's religious belief are quintessential fact questions"); *Bethea v. Access Bank*, No. 8:17CV135, 2018 WL 1954246, at *2 (D. Neb. Apr. 19, 2018) ("Establishing that a religious belief is 'sincerely held' requires a determination of Plaintiff's credibility. And credibility issues such as the sincerity of an employee's religious belief are quintessential fact questions best left to a jury.") (cleaned up). Consequently, the Court finds that a fact question remains as to the credibility of Plaintiff's beliefs.

### B. Undue Burden

Assuming, *arguendo*, Plaintiff's religious beliefs are sincerely held, and he establishes a *prima facie* case for religious discrimination, the Court turns to Defendant's burden to show that accommodating Plaintiff's religious beliefs would result in undue hardship. *Seaworth*, 203 F.3d at 1057.

"The reasonable accommodation provision under Title VII provides that while employers must make reasonable accommodations for employees' bona-fide religious practices, employers need not suffer 'undue hardship.'" *Brokken v. Hennepin Cnty.*, No. CV 23-1469 (JRT/DJF), 2024 WL 1382150, at *5 (D. Minn. Mar. 29, 2024) (quoting *Harrell v. Donahue*, 638 F.3d 975, 979 (8th Cir. 2011)).  The Supreme Court recently held that to establish "undue hardship," an employer "must show that the burden of granting an accommodation would result in substantial increased costs in relation to the conduct of its particular business." *Groff v. DeJoy*, 600 U.S. 447, 470, 143 S. Ct. 2279, 216 L.Ed.2d 1041 (2023).  "[W]hether a given accommodation would cause undue hardship is a fact-intensive inquiry. *Lee v. Seasons Hospice*, 696 F. Supp. 3d 572, 580 (D. Minn. 2023) (internal quotations omitted).  "Determinations of what constitutes an 'undue hardship' must be made on a case-by-case basis." *Harrell*, 638 F.3d at 979.  "[C]ourts must apply the test in a manner that takes into account all relevant factors in the case at hand, including the particular accommodations at issue and their practical impact in light of the nature, size and operating cost of an employer." *Groff*, 600 U.S. at 470–71, 143 S. Ct. 2279 (cleaned-up).

Defendant argues that "[t]here can be no question that permitting [Plaintiff] to work with critical pediatric patients without the required Covid-19 vaccination presented an undue burden." ECF No. 19, p. 13.  Defendant states that "[b]ecause of the substantial risk [Plaintiff] presented to his patients, families, coworkers, and their families, his requested accommodation presented an undue burden on [Defendant]'s business—safe home health treatment—that could not be eliminated," thus "Plaintiff's claims must be dismissed." *Id.* at 18.

In response, Plaintiff argues "that there would have been no undue hardship with substantial cost to let Plaintiff be tested and quarantined if exposed" to Covid-19 and that "there simply is no record evidence of a substantial cost to Defendant for allowing Plaintiff . . . to mask,

12

test, and quarantine for a period of time." ECF No. 21, p. 12-13.

The Court finds that the record is devoid of *evidence* showing that granting an accommodation would result in substantial increased costs in relation to Defendant's business. While the Court is aware of the nature of Defendant's business, the Court is unaware of the "size and operating cost" of the business and the potential impact an accommodation such as the masking, testing, and quarantining of one employee, would have on those factors. *Groff*, 600 U.S. at 471, 143 S. Ct. 2279. Further, Plaintiff asserts that Defendant made no attempt and "failed to engage in any process to attempt to accommodate Plaintiff,"[6] and "terminated Plaintiff simply because he did not want to get the Covid-19 vaccine due to his religious beliefs." ECF No. 21, p. 14. In fact, Plaintiff asserts that Defendant did not engage in any sort of communication with him at all to discuss his request. *Id.* However, Defendant states in its notice to Plaintiff informing him of the denial of his request that the permanent exemption request was "discussed with [Plaintiff on] 10/19/2021." ECF No. 19-8. As such there are questions of fact that remain in this case regarding the issue of undue hardship. Accordingly, the Court finds that summary judgment is inappropriate, and Defendant's motion should be denied.

## IV.  CONCLUSION

For the above-stated reasons, Defendant's Motion for Summary Judgment (ECF No. 18) is hereby **DENIED**.

**IT IS SO ORDERED**, this 5th day of August, 2024.

/s/ Susan O. Hickey
Susan O. Hickey
Chief United States District Judge

---

[6] Plaintiff also asserts that the CMS mandate allowed for religious exemptions.  *See* ECF No. 22-1, p. 94.